liWALTZER, Judge.

STATEMENT OF THE CASE

By a bill of information, appellant, Troy Chess, and Kerri Martin were charged with distribution of crack cocaine, to which Chess entered a plea of not guilty. Following a combined preliminary hearing and hearing on the motion to suppress the evidence, the district court found probable cause and denied the motion to suppress. On 31 October 1996, a twelve-member jury found Chess guilty as charged. During the pretrial and trial phases, Chess was represented by a member of the Orleans Indigent Defender Program. On 26 November 1996, Mr. Guy Lillian became attorney of record, and filed motions for post-conviction judgment of acquittal and a new trial, which were denied. Chess was sentenced to serve fifteen years at hard labor. Thereafter, the state filed a multiple offender bill of information charging Chess as a second felony offender based upon a 1995 guilty plea to possession of cocaine to which Chess entered a guilty plea. After having vacated the original sentence, the district court resenteneed Chess to serve fifteen years at hard labor.

STATEMENT OF THE FACTS

Troy Chess was arrested on 16 August 1996, following a controlled drug purchase by an undercover police officer. The incident occurred at approximately 123:3Q P.M. The entire transaction was audio- and video-taped by a back-up team of police officers.[1]
Detective David Duplantier of the New Orleans Police Department Second District, Narcotics Division, testified that on 16 August 1996 he was working as an undercover operative, whose target was in the Fourth District. He drove his undercover vehicle into the 700 block of Teche Street and made eye contact with Chess, who was standing on the corner and flagged the officer over to stop his truck, whereupon Chess approached the detective’s truck window. Detective Du-plantier asked for a “20” which he explained at trial was street language for a twenty dollar piece of crack cocaine. Chess told the detective to pull to the side of the road, and he walked away. After a minute or two, Chess returned to the detective and exchanged a piece of crack cocaine wrapped in plastic for the detective’s marked twenty dollar bill, and the detective drove off. The parties stipulated that the substance purchased by Detective Duplantier tested positive for cocaine.
Officer Tremaine Johnson testified that on 16 August 1996 he was assigned to the NOPD Narcotics Division and was working an undercover drug operation on the West Bank. He acted as the cover person for Detective Duplantier and kept visual contact with the drug dealer. Officer Johnson testified that he saw Detective Duplantier drive into the 700 block of Teche Street and saw Chess walk to the truck. He heard Detective Duplantier ask Chess if he could get a twenty, and Chess said, “Okay. Pull your truck to the side of the street.” Officer Johnson then saw Chess walk across the street and meet another subject with whom Chess had a brief conversation. The subject handed Chess an object, Chess walked back across the street to Detective Duplantier and handed him the object and received |3from the detective a twenty dollar bill. Chess met the subject and gave him the money, whereupon Officer David Lemoine and Sergeant Sposito of the back-up team moved in and arrested Chess and the other subject.
Officer Lemoine testified that he participated in Chess’s arrest, providing technical support and gathering the audio- and videotape recordings. The twenty dollar bill was found on the second individual. No drugs were found on either person. After the arrests, Officer Duplantier identified Chess as the person who had sold him the cocaine. At trial, a stipulation was made as to the report of the criminalist who performed the tests on the cocaine.
Chess testified in his own behalf. He said he had discussed the ease with his trial counsel. Chess admitted that he used cocaine and sold the cocaine in question, but claimed *535 that he did so only to acquire cocaine for his own habit. He also admitted to a prior conviction for using drugs.

ERRORS PATENT REVIEW

A complete examination of the record, including all minute entries, reveals no errors patent.

ASSIGNMENT OF ERROR: Trial counsel was ineffective.

Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief, filed in the district court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983).
The claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the ^defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, supra at 694, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
This court recognized that if an alleged error falls within the ambit of trial strategy it does not establish ineffective assistance of counsel. State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as opinions may differ on the advisability of a tactic, neither hindsight nor the ultimate success of a particular strategy is the proper standard for judging the competence of counsel’s trial decisions. State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
Chess asserts that counsel was ineffective for stipulating to the report prepared by the criminalist who tested the substance and found that it tested positive for cocaine. He argues that the specimen could have been mislabelled or mishandled, or may have been “bunk” or false cocaine.
This argument is speculative. The record shows that the state filed the, proper notice of intent to offer the report as prima facie proof of its contents. See La.R.S. 15:499-501. Stipulating to the Crime Lab report is routinely done. ^Therefore, counsel cannot be deemed ineffective, and Chess’s claim is without merit.
Chess asserts that counsel was ineffective for 'permitting him to take 'the stand at trial and to incriminate himself. He argues that the record is sufficient to address the claim because the transcript is void of any indication that counsel alerted him to the consequences of his testimony. However, the transcript shows that a one hour recess was taken at Chess’s counsel’s request just before Chess’s testimony. At the beginning of Chess’s testimony, his attorney asked him whether they had a chance to discuss the case, and Chess answered, “yes.” Chess then offered his testimony to the jury.
In light of the apparent discussion between counsel and Chess, this claim cannot be resolved based upon the record before this Court. The claim is more appropriately raised in an application for post-conviction relief.

CONCLUSION AND DECREE

The conviction and sentence of Troy Chess are affirmed.

*536
CONVICTION AND SENTENCE AFFIRMED.

. The tape was shown to the jury, but it is not part of the record. Although trial counsel objecl-ed to the tape at trial, appellant has alleged no error on appeal'conceming the tape.